**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TANTIVY COMMUNICATIONS, INC., <br>     Plaintiff, <br><br> v. <br><br> LUCENT TECHNOLOGIES INC., <br>     Defendant. | § § § § § § § § § § CIVIL ACTION NO. 2:04-CV-79 (TJW) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Exclude (#142). The Court carries Plaintiff's Motion with the case but makes the following findings related thereto:

**I.     Introduction**

Tantivy brought its motion to exclude based on alleged discovery abuses of Lucent, including: (1) withholding of interoperability testing data and documents, (2) misrepresenting the existence of interoperability testing data and documents, (3) allowing the destruction of some of these documents and (4) producing documents for the first time in an expert report that had never been provided to Tantivy. In short, Tantivy alleges that Lucent tried to "hide the ball" when it came to certain documents.[1] Based on the evidence submitted by the parties, the Court agrees.

**II.    Factual Background Relating to Interoperability Testing Documents**

Interoperability testing documents relate directly to the issue of whether Lucent infringes Tantivy's patents. Contrary to Lucent's arguments, these documents have been relevant to this case since its inception.

---

[1] This is not to say that Tantivy's behavior has been pristine. This Court has today addressed Tantivy's discovery conduct related to the production of prior art.

On September 3, 2004, Tantivy requested "interoperability testing of Lucent cdma2000 Products." Tantivy also requested "all documents relating to Lucent cdma2000 Products located on or available for download from any Internet website, including, without limitation, customer websites." Even more importantly, this Court's Discovery Order ¶ 3 required Lucent to produce, in December of 2004, "a copy of all documents, data compilations, and tangible things in [its] possession custody or control . . . that are relevant to . . . claims or defenses involved in this case."

On November 12, 2004, Tantivy served interrogatories requesting that Lucent identify by Bates number a "complete non-duplicative set of . . . maintenance and testing procedures . . . delivered to a customer of Lucent 3G cdma2000 Products [as defined]." This would obviously include interoperability testing documents. However, Lucent in its interrogatory responses did not identify any documents related to interoperability testing.

On December 13, 2004, Tantivy reiterated its request for documents "evidencing interoperability testing of Lucent cdma2000 products." On January 19, 2005, Lucent responded that it was unaware of the existence of any interoperability testing documents: "Lucent is unaware that documents relating to . . . interoperability testing have been prepared for or by Lucent[.]"

The next day, Tantivy responded to Lucent by informing Lucent that it was seeking documents related to testing performed at a Lucent facility known as "Terminal Interoperability (I/O) Lab." Tantivy informed Lucent that it had discovered references to interoperability testing in various Lucent documents and that Lucent's website indicated that there were three Lucent laboratories that apparently performed interoperability testing.[2] However, even in light of Tantivy's specific

---

[2] Lucent attempts to shift blame on Tantivy for Tantivy's failure to identify which web pages referenced the interoperability laboratories. However, Lucent, and not Tantivy, has the affirmative duty to search for, and locate, relevant documents. Further, Tantivy provided Lucent

references to laboratories and documents, Lucent responded on January 27, 2005, that it "still was unaware of any documents related to . . . interoperability testing."

On August 26, 2005, however, the true facts regarding interoperability testing began to be revealed. On that date, Tantivy took the 30(b)(6) deposition of a Lucent representative, David Welch. During that deposition, Mr. Welch admitted that interoperability testing documents did exist and that the interoperability test organization is a related entity to Lucent. However, Mr. Welch did not bring any interoperability test plans, contracts, or test results to the deposition even though such documents were fairly called for in the deposition notice.

Moreover, the depositions revealed that not only did Lucent misrepresent that these documents existed, but Lucent has allowed many of these documents to be destroyed through normal document destruction practices. According to testimony of Dale Hakala, Technical Manager of Lucent LIVE Net in Lisle, Illionois, paper documents have been shredded and electronic documents have been deleted that include interoperability contracts and test plans. While Lucent has been able to locate some of the documents created since September of 2004, the Court finds that some interoperability documents were destroyed.

### III.  Background for Dr. Rhyne's Expert Report Documents

On June 22, 2005, Tantivy served additional interrogatories on Lucent with two interrogatories requesting facts related to Lucent's contentions that Lucent did not infringe or induce infringement of the patents-in-suit. Lucent did not include in its responses any reference to the four documents relied upon by Dr. Rhyne in his expert report – nor did it actually produce the documents.

---

with the name of one of the laboratories. The Court simply does not credit any argument that a representative of Lucent would not know of these interoperability testing centers – especially in light of the testimony of one of Lucent's 30(b)(6) representatives, Mr. David Welch.

Instead, on September 13, 2005, Tantivy produced Dr. Rhyne's Rebuttal Expert Report on Non-Infringement. This report contained four documents, heavily relied upon by Dr. Rhyne, but which had never been produced to Tantivy. Thus, at the eleventh hour, and after most of the discovery in the case was completed, after expert reports were produced, Tantivy was finally in possession of the documents Lucent believed most strongly supported its non-infringement position.

**IV.    Relevant Law**

As interoperability testing documents and documents relied upon by an expert are relevant to this case, they were required to be produced. By failing to do so, Lucent has violated Fed. R. Civ. P. 26 and this Court's Discovery Order ¶ 3. Fed. R. Civ. P. 37 provides that this Court may punish a party for the types of discovery violations Lucent has engaged in.

Further, failure to retain relevant records during the litigation period allows for a strong adverse inference to be drawn against the party who failed to retain the records. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996). Lucent and its counsel are well aware that a party in litigation must suspend its routine document retention/destruction policy and establish a "litigation hold" to ensure the preservation of relevant documents. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). The party and its counsel should ensure that (1) all sources of relevant information are discovered, (2) relevant information is retained on a continuing basis, and (3) relevant non-privileged material is produced to the opposing party. *Id*. While this Court is aware that in certain cases, some documents will "slip through the cracks" and not be preserved, Lucent has offered no credible explanation for why interoperability documents were not retained as required by law – especially when they had been specifically requested numerous times by the Plaintiff.

## VI.    Lucent's Explanations Are Not Credible

Lucent's attempts to explain the late productions are meritless.  First, Lucent argues that Dr. Rhyne's reliance on the "new" documents resulted from Tantivy's new infringement theories[3] and were therefore not required to be produced under P.R. 3-4(a) until those new infringement theories were asserted.  It is Lucent's position that P.R. 3-4(a) governs the production of relevant technical documents.  Lucent is wrong.

This Court makes clear at every Scheduling Conference that its mandatory disclosures under Paragraph 3 of the Discovery Order require production of documents far in excess of what is required under the Federal Rules.  Lucent and its counsel are well aware of this court's views on discovery.  Lucent, moreover, was given the opportunity to object or modify these mandatory disclosures but chose not to.  Thus, Lucent's attempts to explain away its failure to produce interoperability testing documents or the documents relied upon by Dr. Rhyne are not supportable.  P.R. 3-4(a) does not set the boundary for what is relevant for production.

Further, Tantivy made clear through repeated document requests and interrogatories that it believed interoperability testing documents were relevant to this case.  Lucent did not respond - as it does now - with the argument that these documents were irrelevant or beyond the scope of P.R. 3-4(a).  Instead, Lucent's principal response has been to state that no such documents exist - a fact both parties now know was not true.

In addition, Dr. Rhyne testified at his deposition that he believes he received at least one of the disputed documents on or about June 16, 2005 – two months before Tantivy's expert report was

---

[3] Lucent's complaints regarding Tantivy's new infringement theories are not wholly without merit and this Court will address those issues in the near future.

filed with new infringement theories. Dr. Rhyne also testified that two other documents he relied upon but that were not timely produced were in his possession very early in the development process that led to his report. However, once again, Lucent chose not to produce the documents until serving Dr. Rhyne's report.

Finally, Lucent's arguments that the documents were public and therefore did not have to be produced has been rejected by this Court many times and is rejected again here. Even if public, one of these documents is contained in a Lucent publication, was written by Lucent employees, and was written about Lucent equipment. This was a Lucent document and should have been produced - publicly available or otherwise.

## VII.   The Court's Findings

Lucent's interoperability testing documents relate to whether Lucent infringes Tantivy's patents during its testing of the Lucent products at issue in this case. Further, Dr. Rhyne's reliance on the four documents in his expert report make clear their importance. Both sets of documents should have been produced in December of 2004.

Tantivy has been prejudiced by the timing of Lucent's disclosures and has spent considerable sums developing its infringement analysis. Factual and expert discovery is concluded and the trial date is here. If the materials had been produced in December of 2004 as required, Tantivy could have planned and conducted discovery based on these documents and Tantivy's experts could have timely reviewed them.

Continuing the case will not completely resolve the issue. Continuances for discovery misconduct would allow parties to disregard Rule 26 and this Court's Discovery Orders with impunity. Further, granting a continuance would reward Lucent for making a tactical decision to

ambush Tantivy.  This Court will simply not allow lawyers or their clients to lay behind the log and disregard their discovery obligations.  Parties have an affirmative obligation in this Court to search for and produce relevant documents early in the case.  This includes searching the records of related companies or any other company whereby a party to the litigation has a legal right to documents.  Further, technical document production is not limited solely to P.R. 3-4(a) production.  The parties are under an obligation to produce all relevant documents.

Lucent and Lucent's attorneys behavior in hiding documents, misrepresenting the existence of documents, and allowing the destruction of documents is sanctionable conduct–both as to Lucent and to Lucent's attorneys.  The court will issue an appropriate remedy once it has considered the evidence in the case and has evaluated the materiality of the information and the prejudice caused by its late production.

SIGNED this  1st  day of November, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE